IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RANDALL MORRIS                                                                                            PLAINTIFF

v.                                             Civil No. 4:20-cv-04101

STEVEN KING, R.N.; WARDEN JEFFIE WALKER;
CORPORAL GOLDEN ADAMS; DR. KEVIN MCCAIN;
SHERIFF JACKIE RUNION; SGT. JASON GUTHRIE; SERGEANT
RICHARD HENDERSON; and CPL A. ELLIS                                              DEFENDANTS

## ORDER

Before the Court is Plaintiff's Motion to Compel the productions of documents from Defendants Runion, Adams, Walker and Landreth. (ECF No. 144). Defendants have filed a Response in Opposition to the motion. (ECF No. 152).

### I.    BACKGROUND

On November 5, 2021, Plaintiff filed the instant motion seeking production of numerous documents. The specific requests and Defendants' responses are as follows:

1. Request for Production No. 31: Randall Morris was held in Max A pod on administrative lockdown on October 16, 2020 to October 20, 2020, in a cell with inmate D.J. Lane, who was on disciplinary lockdown. Please provide documents showing why D.J. Lane was on disciplinary lockdown to include any and all documentation concerning D.J. Lane's violent disciplinary history. This request is relevant to Claim #1, #4, #5, #6, #8, #14, #15, #16 and #17 and it directly corresponds to the email from attorney Matthew Hill to U.S. Marshal Timothy Geer dated October 21, 2020 which was provided to the defendants within Plaintiff's 6/14/21 mailing of discovery documents.

   Defendants' Response: Objection. Mr. Lane is not a part of this lawsuit and his information is not proportional to the needs and issues of this case, and answering this request might violate his privacy rights.

2. Request for Production No. 32: Please provide documents showing whether or not the six inmates that were moved into Max E pod and into cells E11, E12 and E13 on July 6, 2020 through July 8, 2020 had tested positive for Covid-19

1

on 7/6/20. This request is relevant to claims #8, #16 and #17.

Defendants' Response: Objection. These inmates are not a part of this lawsuit and their information is not proportional to the needs and issues of this case, and answering this request might violate their privacy rights.

3. Request for Production No. 34: Please provide documents showing the exact locations within MCDC where inmate Tyrone Harris was housed to include the pod, cell and psych cells to include the durations at each location between December 1, 2020 and January 31, 2021. This is relevant to claim #14 and claim #15.

Defendants' Response: Objection. This inmate is not a part of this lawsuit and his information is not proportional to the needs and lawsuit and his information is not proportional to the needs and issues of this case, and answering this request might violate their privacy rights.

4. Request for Production No. 35: Please provide documents showing all disciplinary reports that were filed by Head Nurse Steven King against MCDC inmates from January 1, 2020 to March 24, 2021 to include charges and regardless of the disciplinary outcomes. The documents should include all disciplinary and investigative reports that were a result of Steven King's allegations even if Steven King did not personally write the report or a statement. Inmates names can be redacted. This request is relevant to Claim #1.

Defendants' Response: Objection. These inmates are not a part of this lawsuit and their information is not proportional to the needs and issues of this case, and answering this request might violate their privacy rights and should be directed at SHP and not these defendants.

5. Request for Production No. 36: Please provide documents of all disciplinary actions, reprimands and sanctions taken by MCDC and/or SHP against head nurse Steven King since he became a nurse at MCDC in 2016. This request is relevant to claim #1, #2, #3, #5, #6, #8, #9, #12, #14, #15 and #16.

Defendants' Response: Objection. This information requested is not proportional to the needs and issues of this case, and answering this request might violate Mr. King's privacy rights and it is not within the knowledge of Defendants. This should be directed to SHP.

6. Request for Production No. 39: Please provide documents regarding the MCDC policy governing inmate influenza and pneumonia vaccinations to include the time frame that the policy sets forth to administer them. This request is relevant to claim #12.

> Defendants' Response: Objection. The information requested is not proportional to the needs and issues of this case and is overly broad and unduly burdensome.

(ECF No. 144, pp. 4-9.)

In response Defendants first argue Plaintiff's Requests for Production Nos. 31, 32, 34, and 35 are for information about non-party inmates, including disciplinary information (31, 35), medical information (32), and housing history (34) and Plaintiff does not have any standing to seek this information. They also argue this information "seeks to violate the other inmates' privacy information." (ECF No. 153, p. 6). In addition, as for Request for Production No. 32, Plaintiff has been provided an affidavit from the Warden establishing that no tested COVID-positive individuals were moved into the Max E pod where Plaintiff was during the requested period and therefore this moots his request. *Id.*

Second, Defendants argue Request for Production No. 36 asks for disciplinary history of Southern Health Partner Inc.'s employee King. They state this request should be directed to Southern Health and was "not within the knowledge of Defendant." Third, as for Request for Production No. 39 which asks for flu and pneumonia vaccinations policies, Defendants state the Miller County Detention Center has no policies in place as Miller County contracts with Southern Health Partners Inc. to provide medical, and if they have a policy, it is not Miller County's and the County does not have access to it.

## II.　　APPLICABLE LAW

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which provides in part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to

3

>any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

>On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>(i) The discovery sought is unreasonable, cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>(ii) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>(iii) The proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Further, under rule 26(c), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

The burden is generally on the party resisting discovery to show why discovery should be limited. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010). In carrying this burden, the objecting party cannot rely on mere statements and conclusions but must specifically show how the objected-to disclosures would be irrelevant or overly burdensome, overly broad, or oppressive. *See St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (collecting cases).

### III. DISCUSSION

The Court will address each of Plaintiff's discovery requests separately.

Request for Production No. 31 seeks documents relating to an inmate – D. J. Lane – who was once a cellmate of Plaintiff's while both were on disciplinary lockdown. Plaintiff specifically

asks for "documents showing why D.J. Lane was on disciplinary lockdown to include any and all documentation covering D.J. Lane's violent disciplinary history." (ECF No. 144, p. 4). The Court finds Plaintiff's request is not proportional to Plaintiff's claims in that the material requested involves information about another inmate who is not a party to this lawsuit and the inmate - D.J. Lane has not consented to the disclosure of this information from Defendants. Moreover, Plaintiff can certainly submit an affidavit or testify at the trial describing what harm, if any, he experienced because of being housed with Mr. Lane.

Request for Production No. 32 seeks medical information involving six (6) inmates Plaintiff states were moved into Max E pod and other cells between July 6, 2020 and July 8, 2020 who had tested positive for Covid-19 July 6, 2020. The Court finds this request is not proportional to the case because the inmates are not parties to this lawsuit and this Court will not order the production of medical information regarding other inmates without their express consent. Finally, the Court notes Plaintiff never tested positive for Covid-19 during his incarceration in the Miller County Detention Center.

Request for Production No. 34 seeks information asking for "the exact locations within MCDC where inmate Tyrone Harris was housed to include the pod, cell and psych cells…duration at each location between December 1, 2020 and January 31, 2021." (ECF No. 144, p. 6). Although Plaintiff, alleges he was placed near this inmate who he claims was mentally ill, the Court finds Plaintiff's request is overly burdensome, broad, and oppressive and may involve confidential mental health information. Tyrone Harris has not consented to the disclosure of any information regarding his physical or mental health. Again, Plaintiff may submit an affidavit or testify at trial stating the time and duration he was subjected to any harm caused by being placed close to this inmate.

Request for Production No. 35 asks for disciplinary reports filed by Defendant Steven King

against other Miller County Detention Center inmates "from January 1, 2020 to March 24, 2021 to include charges and regardless of the disciplinary outcomes all disciplinary and investigative reports that were a result of Steven King's allegations even if Steven King did not personally write the report or a statement." (ECF No. 144, p. 7). The Court finds this request is not proportional to the needs of this case, is overly burdensome, broad, and oppressive.  In addition, the Court does not believe this request is relevant to any of Plaintiff's claims.

Request for Production No. 36 seeks information regarding the disciplinary history of Defendant King – an employee of Southern Health Partners Inc. Defendants state this request should be directed to Southern Health and they do not possess nor do they have access to any such information if it exists. Rule 34 provides for production of documents and things within "the responding party's possession, custody or control."  Fed. R. Civ. P. 34 (a)(1).

Finally, Request for Production No. 39 asks for flu and pneumonia vaccination policies of the Miller County Detention Center. (ECF No. 144, p. 8). Defendants have informed Plaintiff and represent to this Court that they do not have any specific policies in place for vaccinations. They go on to explain that Miller County contracts with Southern Health Partners Inc. to provide medical services to the inmates and any policy regarding vaccinations, if it exists, would be in the possession of Southern Health Partners, Inc. Again, Defendants cannot produce what does not exist or what is not in their control.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel (ECF No. 144) is **DENIED**.

**IT IS SO ORDERED** this 4th **day of January 2022**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE