IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RANDALL MORRIS                                                                                   PLAINTIFF

v.                                            Civil No. 4:20-cv-4101

STEVEN KING, R.N.; WARDEN JEFFIE
WALKER; CAPTAIN GOLDEN ADAMS;
DR. KEVIN MCCAIN[1]; SHERIFF JACKIE
RUNION; SGT. JASON GUTHRIE; SERGEANT
RICHARD HENDERSON; and CPL. A. ELLIS                                       DEFENDANTS

## ORDER

Before the Court is a report and recommendation issued by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 230. Judge Bryant recommends that the Court grant in part and deny in part the County Defendants'[2] summary judgment motion. ECF No. 182. Plaintiff Randall Morris objects. ECF No. 234.

## I. BACKGROUND

On November 18, 2020, Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. On February 24, 2021, Plaintiff filed a second amended complaint, which remains the operative complaint.[3] ECF No. 21. Plaintiff also filed a supplemental complaint which added two claims against Defendant Jeffie Walker. ECF No. 63. Plaintiff is suing all Defendants in their individual and official capacities. Plaintiff's claims arise from alleged incidents that occurred while he was incarcerated in the Miller County Detention Center ("MCDC") from January 10, 2020, to March

---

[1] Defendant McCann is incorrectly referred to on the Court's docket at "Kevin McCain."
[2] "County Defendants" refers to Defendants Walker, Adams, Runion, Guthrie, Henderson, and Ellis. Defendants King and McCann filed a separate summary judgment motion. ECF No. 172. Thus, this order does not address or rule on any claims against King and McCann.
[3] Plaintiff's second amended complaint consists of thirty-eight (38) pages, asserting seventeen (17) claims against eight (8) Defendants.

24, 2021.

At all times relevant to this lawsuit, Defendant Walker was the Warden at the MCDC; Defendant Runion was the Sheriff of Miller County, Arkansas; Defendant Adams was a captain at the MCDC; Defendant Henderson was a sergeant at the MCDC; Defendant Guthrie was a sergeant at the MCDC, and Defendant Ellis was a corporal at the MCDC.

The Report and Recommendation (ECF No. 230) contains a detailed factual background, which the Court has reviewed and relied on. In this order, the Court will summarize the facts that give rise to the claims related to Plaintiff's specific objections.

On March 2, 2020, Defendants Walker and Runion instituted precautionary measures and procedures in response to the threat posed by COVID-19. ECF No. 182-2, pp. 1-6. On March 23, 2020, the MCDC promulgated Standard Operating Procedure 05.00 Pandemic and Public Health Emergency. ECF No. 182-2, p. 9. Procedure 05.00 applied to all staff and set out guidance for the use of personal protective equipment ("PPE"), isolation, and quarantine. The policies that were implemented were designed to educate staff regarding the following: health guidelines; the appropriate quarantine and isolation of inmates; appropriate use of PPE; implementation of temperature checks; cleaning and disinfecting of jail surfaces; and limiting the transmission of COVID-19 by suspending fingerprinting, property releases, and lobby visitation.

In her affidavit, Defendant Walker states that these policies and procedures represented a good-faith effort to limit the spread of the COVID-19 virus within the MCDC, given the ever-evolving information about the transmission of the virus. ECF No. 82-1. According to Plaintiff, MCDC staff began to consistently disregard the proper wearing of PPE while interacting with inmates. ECF No. 209, p. 2. He states that the only mass COVID-19 testing occurred on July 6, 2020. ECF No. 209, p. 2. He further states that, in response to his concern about the staff not

consistently wearing PPE, Walker told him that the staff needs to be able to breathe. While Plaintiff was housed in the MCDC, he did not test positive for COVID-19. However, Plaintiff claims that he did exhibit cold-like symptoms that could have been COVID-19. Plaintiff clams that he was denied the opportunity to properly clean his cell to minimize his risk of contracting COVID-19.

At Plaintiff's request, he was placed in the protective custody pod, where he was not always given outside yard time. Walker stated in her affidavit that protective custody inmates are let out of their cells for one hour every day so they can exercise in the day room or use the kiosk. ECF NO. 182-1, p. 4. She further stated that protective custody inmates are not guaranteed outside yard time because of weather and logistics issues.

During a visit to the infirmary, after Kevin McCann approved Plaintiff's request for medical shoes, Plaintiff alleges that Steven King, a nurse, angrily opined to McCann that Plaintiff did not need medical shoes. Plaintiff states that he ignored King's comments and continued to discuss his health concerns with McCann. Plaintiff alleges that this angered King, and King directed a guard to write Plaintiff up for disrespect. According to Plaintiff, King stated that Plaintiff could not stay in protective custody.

The following morning, Plaintiff states that King encountered Plaintiff and noticed that he was still in protective custody. A few hours after this encounter, Plaintiff was moved to Max A pod, which was being used as a Covid-19 quarantine pod. Plaintiff claims that he was placed in a cell with a violent and mentally ill inmate. According to Defendant Warden Jeffie Walker, Plaintiff was placed into disciplinary segregation because of disrespectful behavior while he was in the infirmary. ECF No. 182-1, p. 1. A disciplinary hearing was held on October 21, 2020, and Defendant was found guilty of a disciplinary infraction. ECF No. 182-1, p. 1. Plaintiff was

sentenced to time served for this infraction, which was five days in Max Pod Block A.

Plaintiff claims that he did not receive a specific letter or copy of Paraplegia News that was mailed to him at MCDC. He further asserts that he did not receive a notification that the letter and publication had been disapproved.

The County Defendants filed a summary judgment motion regarding all claims. ECF No. 182. Plaintiff opposes the motion. ECF Nos. 206, 207, 208, 209. Judge Bryant issued a report and recommendation addressing the County Defendants' summary judgment motion. ECF No. 230. Judge Bryant recommends that the Court grant in part and deny in part the summary judgment motion and dismiss this case with prejudice. Plaintiff objects. ECF No. 234.

## II. STANDARD

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1). Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* W.D. Ark. Local Rule 72.2(VII)(C). After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). The Court applies a liberal construction when determining whether

*pro se* objections are specific. *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995). Non-specific objections may require "full *de novo* review" if the record is concise. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (requiring *de novo* review when the record was "strikingly brief," and the magistrate judge did not conduct a hearing). A "clearly erroneous" standard of review applies to the portions of a report and recommendation that are not objected to. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996).

### III.  DISCUSSION

The Court will first discuss the claims against the County Defendants that are related to Plaintiff's specific objections. These claims are as follows:  failure to protect/intervene; deliberate deprivation of outside exercise; failure to protect; failure to train; denial of mail and publications; and prolonged exposure to extreme behavior of mentally ill inmates. The Court will then discuss the remaining claims that are not related to any specific objections

**A.  Claim Four—Failure to Protect/Intervene**

In this claim, Plaintiff alleges that Defendants Walker, Runion, Adams, and Henderson violated his constitutional rights by failing to protect him from Nurse Stephen King's interference with Plaintiff's medical care during an infirmary appointment on October 15, 2020. Judge Bryant found that while prison officials must provide humane conditions of confinement, including protecting inmates from violence, the Eighth Circuit has not recognized a duty to intervene to prevent any other violations outside of the excessive force context. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012). Thus, Judge Bryant recommends that this claim be dismissed. Plaintiff objects.

First, Plaintiff argues that he brought this claim against Defendant Guthrie and not Defendant Henderson. In his second amended complaint, for "Claim #4:  Failure to Protect or

Intervene," Plaintiff lists Runion, Walker, Adams, and McCann as Defendants for this claim. ECF No. 21, p. 13. Plaintiff also lists a John Doe Defendant. It appears to the Court that Plaintiff intended for the John Doe Defendant in this claim to be replaced by Defendant Guthrie. ECF No. 79. However, the claim is still without merit because the Eighth Circuit has not recognized a duty to intervene to protect inmates from interference with medical care. Plaintiff also argues that Defendant Adams should not be dismissed from Claim Four; however, the claim against Defendant Adams fails for the same reason discussed above—that the Eighth Circuit has not recognized a duty to intervene under the circumstances presented here. Accordingly, the Court agrees with Judge Bryant that the individual capacity claim regarding Claim Four should be dismissed.

Plaintiff also brings an official capacity claim regarding Claim Four, which the Court interprets as a Fourteenth Amendment due process claim. Plaintiff alleges that the MCDC policy is to punish immediately and then sort the factual details out later at a disciplinary hearing. He asserts that inmates who are accused of infractions are moved to disciplinary lockdown and stripped of privileges as soon as they are accused and without any review of the evidence.

To prevail on a Fourteenth Amendment due process claim, a plaintiff "must first demonstrate that he was deprived of his life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). "To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). An inmate's liberty interest is limited to the nature of confinement and does not extend to procedural rules imposed by the state. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). The Eighth Circuit has held that an inmate's placement in administrative

segregation for twenty-six months without a disciplinary charge or conviction did not "demonstrate that his liberty interest was curtailed." *Rahman X*, 300 F.3d at 974. Here, Plaintiff was placed in administrative segregation for five days while he waited on his disciplinary hearing. Judge Bryant found that this five-day placement in administrative segregation did not create a significant hardship to demonstrate that Plaintiff's liberty interest was curtailed. Thus, Judge Bryant recommends dismissal of the official capacity Fourteenth Amendment due process claim.

Plaintiff objects to the recommended dismissal of this claim, arguing that he has shown that he was not guilty of the disciplinary infraction and that retaliation by Nurse King was the reason for the disciplinary charge. Plaintiff, however, offers no argument as to how the five-day placement in administrative segregation curtailed his liberty interest. Accordingly, the Court agrees with Judge Bryant that Plaintiff's official capacity Fourteenth Amendment due process claim must fail and should be dismissed.

### B. Claim Seven—Deliberate Deprivation of Outside Exercise

Plaintiff alleges that Defendants Runion, Walker, and Adams violated his constitutional right to "outside yard time exercise" for several months. Judge Bryant correctly noted that there is no constitutional right to exercise outside. A constitutional violation exists only if Defendants were deliberately indifferent to Plaintiff's exercise needs. *See Wilson v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (finding forty-five (45) minutes of out-of-cell recreation time per week did not violate the Eighth Amendment's prohibition on cruel and unusual punishment where prison records showed inmate had the opportunity to exercise in his cell and had other opportunities to be out of his cell). Judge Bryant then found that because Plaintiff, who was in protective custody at his own request, was given one hour out of his cell each day for exercise, his Eighth Amendment rights were not violated. Plaintiff objects.

Plaintiff takes issue with the report and recommendation's failure to expound upon all evidence he submitted in support of his lack of exercise claim, and Plaintiff lists this evidence in his objections. Plaintiff admits that he was allowed outside his cell for one hour each day, but he states that, during this hour, he had to choose between a shower, the telephone, law library research, kiosk messaging, and exercise. ECF No. 234, p. 11. He further complains that the larger "day room" to which he had access for one hour was not amenable to brisk walks, which is how he prefers to exercise.

When considering an inmate's lack of exercise claim under the Eighth Amendment, a court should consider the following factors: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Wishon*, 978 F.2d at 449. A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.*

Plaintiff claims that his cell was 8' x 12' and does not allow enough space for "meaningful exercise." ECF No. 234, p. 10. The Court notes, however, that Plaintiff was given one hour each day in a bigger space that is more amenable to "meaningful exercise," although perhaps not brisk walks. Plaintiff does not allege that exercise within his cell or the "day room" was completely unavailable. He simply complains that he could not engage in the exercise he preferred within his cell or the larger "day room." Given that Plaintiff was allowed outside of his cell into a larger space for one hour each day, the Court agrees with Judge Bryant that Defendants Runion, Walker, and Adams are entitled to summary judgment on this claim.[4]

### C. Claims Eight, Sixteen, and Seventeen—Claims Related to MCDC's Response to COVID-19

---

[4]From the Court's review of Plaintiff's objections, it does not appear that he specifically objects to Judge Bryant's recommendation that the official capacity claim regarding his lack of exercise claim be dismissed. The court, having reviewed the record, finds no clear error in this recommendation.

Plaintiff alleges that Defendants Runion, Walker, and Adams deliberately and recklessly disregarded an imminent threat of future harm to him from COVID-19; failed to protect him from COVID-19; and failed to train and supervise regarding the threat of COVID-19. Plaintiff alleges that these claims are ongoing. Judge Bryant found that Defendants Runion, Walker, and Adams are entitled to summary judgment regarding these claims. Plaintiff objects.

### 1. Failure to Protect Against Future Harm

As an initial matter, Judge Bryant correctly noted that, other than naming Runion, Walker, and Adams as individuals involved in being deliberately indifferent to the risk (present and future) of Covid-19 and failing to protect him from Covid-19, Plaintiff does not make any specific factual allegations against these Defendants. Judge Bryant is correct. Even in his objections, when referring to this claim, Plaintiff does not connect any specific action of either Runion, Walker, or Adams to the harm he alleges.

An Eighth Amendment claim for failure to protect is comprised of two elements. First, "an inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendants recklessly disregard that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). The question is whether the prison official has a "sufficiently culpable state of mind," meaning that he is deliberately indifferent to an inmate's safety. *Farmer*, 511 U.S. at 834. The prison official's state of mind is measured by a subjective, rather than an objective standard. *Id.* at 838-39. This subjective standard is an "extremely high standard that requires a mental state of more than gross negligence," namely, "a mental state akin to criminal recklessness." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016).

Plaintiff argues that these Defendants should have known that his safety was in danger.

However, whether they "should have known" is not the standard here. The standard is subjective and requires a mental state akin to criminal recklessness. The Court agrees with Judge Bryant that there is no evidence in the record to support Plaintiff's claim that Defendants Runion, Walker, and Adams were deliberately indifferent to any risk of future harm posed by COVID-19.

### 2. Failure to Protect Against COVID-19

Plaintiff alleges that Defendants Runion, Walker, and Adams failed to protect him from COVID-19. However, Plaintiff admits that he did not contract COVID-19 while at MCDC. Thus, the Court agrees with Judge Bryant that Defendants Runion, Walker, and Adams are entitled to summary judgment on this claim.

### 3. Failure to Train and Supervise

Plaintiff alleges that Defendants Runion, Walker, and Adams failed to supervise regarding the threat of COVID-19. Judge Bryant found that these Defendants were entitled to summary judgment as to this claim. Having reviewed Plaintiff's objections, the Court cannot find where Plaintiff has specifically objected to this finding. Plaintiff recites some law relevant to this claim. ECF No. 234, p. 15. However, Plaintiff does not object to a specific finding or recommendation of Judge Bryant. Nevertheless, the Court will review Judge Bryant's findings as to this claim.

To state a claim for failure to supervise, a plaintiff must show: (1) the supervisor knew of a pattern of unconstitutional acts committed by the subordinate; (2) that the supervisor demonstrated deliberate indifference to, or unspoken authorization of, constitutional violations committed by subordinates; (3) that the supervisor failed to take appropriate remedial action after learning of a subordinate's misconduct; and (4) that the plaintiff was injured as a result of the failure to properly train or supervise subordinates. *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997). Plaintiff alleges that many staff members failed to properly wear PPE. However,

Plaintiff has offered no evidence that this conduct was due to a failure to supervise or train. Further, Plaintiff has not made clear exactly who Defendants Runion, Walker, and Adams failed to train.

On the other hand, Walker has offered evidence that training and supervising were provided. In her declaration, Walker stated that MCDC employees were provided with copies of all the policies and procedures. ECF No. 182-1, ¶ 12. She further noted that supervisors explained the policies and procedures to the jail staff. ECF No. 182, ¶ 12. At shift change, the jail staff had a daily briefing that would include any changes to protocol because of COVID-19. ECF No. 182, ¶ 12. Walker explains that training on COVID-19 was a daily effort, as what was known about the virus was changing daily. ECF No. 182-1, ¶ 12. Plaintiff has not provided any evidence that shows Defendants Runion, Walker, and Adams were deliberately indifferent to alleged constitutional violations committed by subordinates.

Further, Plaintiff has not shown that he was injured as a result of the alleged failure to properly train or supervise. Plaintiff never tested positive for COVID-19 while incarcerated at MCDC and did not submit any sick calls related to any physical conditions other than his paraplegia and a request to have his weight, blood pressure, and blood sugar checked. Accordingly, the Court agrees with Judge Bryant that Defendants Runion, Walker, and Adams are entitled to summary judgment regarding the failure to train and supervise claim.[5]

**D. Claim Eleven and Thirteen—Denial of Mail and Newspapers**

In Claim Eleven, Plaintiff alleges that Defendants Runion, Walker, Adams, and Ellis violated his First Amendment rights by deliberately failing to deliver a specific letter to him. For

---

[5]From the Court's review of Plaintiff's objections, it does not appear that he specifically objects to Judge Bryant's recommendation that the official capacity claims regarding COVID-19 be dismissed. The court, having reviewed the record, finds no clear error in this recommendation.

Claim Thirteen, Plaintiff alleges that Defendants Runion, Walker, Adams, and Ellis violated his First Amendment right by failing to deliver newspapers to him.  When stating these claims, Plaintiff alleged that Defendant Ellis is the one who intercepted the mail and failed to deliver it.  Thus, Judge Bryant recommends dismissal of the claims against Runion, Walker, and Adams because there are no specific allegations that these Defendants were involved in the failure to deliver the mail.

Plaintiff objects to the finding that the claims against Adams and Walker should be dismissed.  Plaintiff states that he sent grievances to Walker and Adams, and they "failed to remedy the problem."  ECF No. 234, p. 21.  Plaintiff alleges a First Amendment claim based on the intercepting of mail.  There is no allegation that Walker, Adams, or Runion intercepted any mail.  Thus, the Court agrees with Judge Bryant that this claim should be dismissed as to Defendants Runion, Walker, and Adams.  However, the individual and official capacity claims against Defendant Ellis regarding the interception and denial of mail remain for further consideration.

### E.  Claim Fourteen—Unlawful Conditions of Confinement (Unsanitary Conditions)

Plaintiff alleges that Defendants Runion, Walker, and Adams subjected him to unlawful conditions of confinement by intentionally placing him in a pod with a mentally ill inmate who created excessive noise and another mentally ill inmate who exposed him to feces and urine.  Judge Bryant found that there are genuine issues of disputed fact concerning whether Plaintiff was exposed to excessive noise and recommends that the individual and official capacity claims regarding excessive noise remain for further consideration.  Plaintiff does not object to this recommendation.

Judge Bryant also found that the claim based on unsanitary conditions must fail because Plaintiff has presented no evidence that he suffered harm resulting from the exposure to urine and

feces.  Plaintiff objects to this finding and argues that he does not have to show harm to bring a claim for unsanitary conditions.  The Court finds that Defendants Runion, Walker, and Adams are entitled to summary judgment on this claim but for different reasons than Judge Bryant found.

"[I]nmates are entitled to reasonably adequate sanitation . . . particularly over a lengthy course of time." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir.2003) (citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989)).  In reviewing whether the conditions of confinement violate the Eighth Amendment, the Eighth Circuit "focus[es] on the length of [an inmate's] exposure to unsanitary conditions and how unsanitary the conditions were[.]" *Owens,* 328 F.3d at 1027.  At the same time, "[w]hile the length of time a prisoner must endure an unsanitary cell is undoubtedly one factor in the constitutional calculus, the degree of filth is surely another . . . ." *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957-58.  "[T]he length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases." *Id.*

In his complaint, Plaintiff asserts that he complained about the "feces and urine . . . that [members of his pod] were exposed to."  This is the only mention of the unsanitary conditions regarding exposure to feces and urine.  Further, the Court can find no evidence in the record that points to how unsanitary the conditions were.  As for length, Plaintiff states he was exposed to these conditions for thirty-four (34) days.  ECF No. 21, p. 32; ECF No. 234, p. 22.

The Court does not doubt that the thirty-four days spent in the cell with a mentally ill roommate were unpleasant and uncomfortable, but there are no facts or evidence in the record to show the level or degree to which the urine and feces were present in Plaintiff's pod.  Based on the relatively short period of time Plaintiff was subject to the alleged unsanitary conditions coupled with the lack of evidence in the record, the Court cannot find that the conditions were of such a level or degree  that they violated the Eighth Amendment.  Thus, the Court agrees with Judge

Bryant that Defendants Runion, Walker, and Adams are entitled to summary judgment on Plaintiff's unsanitary conditions claim.[6]

### D.  Claims to Which Plaintiff Did Not Object

Plaintiff did not object to the recommendation that the following claims against the County Defendants be dismissed:  Claims Five and Six—violation of the Americans with Disabilities Act and the Rehabilitation Act; Claim Nine—hindered access to medical request; Claim Ten—retaliation; Claim Twelve—failure to provide medical care (pneumonia and influenza shot); Claim Fifteen—retaliation; Claim Eighteen—retaliatory seizure of legal documents; and Claim Nineteen—retaliatory transfer.  Further, Plaintiff does not object to the recommendation that all individual capacity claims against Runion be dismissed[7] because he had no contact with Plaintiff at MCDC, and Plaintiff sued him only because he is the Sheriff of Miller County.  After carefully reviewing the report and recommendation (ECF No. 230) as to these claims, the Court finds no clear error.  Therefore, the Court finds that the County Defendants are entitled to summary judgment with respect to these claims.

### IV.  CONCLUSION

Being well and sufficiently advised, and upon *de novo* review of all specific objections, the instant report and recommendation (ECF No. 230) is hereby **ADOPTED** for the above-stated reasons.  The County Defendants' summary judgment motion (ECF No. 182) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant Runion is **GRANTED** summary judgment as to all individual and official

---

[6] From the Court's review of Plaintiff's objections, it does not appear that he specifically objects to Judge Bryant's recommendation that the official capacity claims regarding unsanitary conditions be dismissed.  The court, having reviewed the record, finds no clear error in this recommendation.

[7] Runion never encountered Plaintiff at the MCDC, and Plaintiff only sued Runion because he is the Sheriff of Miller County.  ECF No. 23, p. 18.

capacity claims against him.

2. County Defendants are **GRANTED** summary judgment as to all individual and official capacity claims set forth in Claims Four, Five, Six, Seven, Eight, Nine, Ten, Twelve, Fifteen, Sixteen, and Seventeen. These claims are **DISMISSED WITH PREJUDICE**.

3. Defendants Walker and Adams are **GRANTED** summary judgment as to the individual and official capacity claims set forth in Claims Eleven and Thirteen. These claims are **DISMISSED WITH PREJUDICE**.

4. Defendant Ellis is **DENIED** summary judgment on the individual and official capacity claims set forth in Claims Eleven and Thirteen. These claims remain for trial.

5. Defendants Walker and Adams are **GRANTED** summary judgment on the individual and official capacity claims set forth in Claim Fourteen involving unsanitary conditions of confinement.

6. Defendant Walker and Adams are **DENIED** summary judgment on the individual and official capacity claims set forth in Claim Fourteen involving excessive noise. These claims remain for trial

7. Defendants Walker and Adams are **GRANTED** summary judgment on the individual capacity claims set forth in Claim Fifteen.

8. Defendant Walker is **DENIED** summary judgment on the individual and official capacity claims in Claims Eighteen and Nineteen. These claims remain for trial.

**IT IS SO ORDERED**, this 30th day of September, 2022.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge